■ THOMSON MCKINNON SECURITIES INC., Appellant-Respondent, v JOHN A. WARD, Respondent-Appellant. THOMSON MCKINNON SECURITIES INC., Respondent, v JOHN A. WARD, Appellant

Prior to the stock market crash in October 1987, defendant, a seventy-five-year-old retired veterinarian, was increasingly and heavily invested in high-risk option trading with plantiff-broker. He had dealings in such securities since 1980 and had been actively buying and selling stock securities since 1948. Due to the market crash, there was a drastic decrease in the value of defendant's account which plaintiff liquidated to meet margins. Plaintiff brought an action to recover the debit balance in defendant's account. Defendant filed an answer and verified counterclaim alleging fraud and breach of duty under common law and seeking damages in excess of $3 million.

Plaintiff demonstrated its entitlement to recover the debit balance in defendant's account pursuant to its agreements with defendant *(Weis & Co. v Offenberger,* 31 Misc 2d 628). Moreover, defendant failed to raise any issue of fact with respect to his defenses or counterclaims to defeat plaintiff's motion. Defendant offered only conclusory allegations that plaintiff committed fraud by recommending an unsuitable and

excessive level of naked put sales to defendant with knowledge that defendant failed to appreciate the risks involved. Defendant's argument that he was unaware of the risks of options trading is overwhelmingly contradicted by plaintiff's evidence which includes defendant's own deposition testimony, the testimony of numerous brokers who did business with defendant, agreements signed by defendant and documentation sent to him explaining the risks of options trading. The specific instances in which plaintiff did not take special precautions to assure itself that defendant was suitable for naked put option trading, including its failure to meet with defendant to discuss an active account letter, are legally insufficient to defeat summary judgment. Accordingly, as the evidence was uncontroverted that plaintiff made reasonable efforts to inform defendant of the risks involved in excessive trading of naked puts, defendant has not demonstrated his defense of fraud and breach of duty. (See, Schenck v Bear, Stearns & Co., 484 F Supp 937.) Furthermore, defendant's third counterclaim, alleging that plaintiff was negligent in liquidating his account, is insufficient as a matter of law since by agreement plaintiff was liable for gross negligence or willful misconduct, which was not shown. Defendant's remaining arguments with respect to the order granting plaintiff summary judgment are unavailing.

The inquest hearing was properly held without a jury as defendant failed to make a timely jury demand (CPLR 4102 [a]). The court awarded plaintiff $495,719.62 (the closing balance in defendant's account as of November 27, 1987) minus $58,422.90 (the amount of opening transactions which could have adversely affected defendant's account). This was error. Plaintiff is entitled to recover the debit balance in defendant's account after all securities positions were closed, which is reflected in the February 1988 closing balance. Furthermore, by utilizing the November 1987 debit balance, the court, in effect, gave defendant a double credit. In addition, as plaintiff concedes, defendant should have been given a credit of $59,626.90. Accordingly, the court should have awarded plaintiff the full deficiency remaining in defendant's account once all securities positions were closed and a credit for the erroneously repurchased puts, i.e., $571,131.33 minus $59,626.90 or $511,504.43. Concur—Murphy, P. J., Sullivan, Ellerin, Ross and Kassal, JJ.